UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON,
AT SEATTLE

FELIX KROUSE,

          Plaintiff,

      v.

AMAZON.COM SERVICES LLC,
AMAZON.COM, INC., HAPPY
SUPPLY, LLC (d/b/a "Cream N2O")
GALAXY GAS, LLC, and XUZHOU
BASIC INDUSTRY CO., LTD. (d/b/a
Galaxy Gas),

          Defendants.

CASE NO. _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Felix Krouse brings this action for personal injuries against certain manufacturers and sellers of nitrous oxide-filled canisters and alleges as follows:

## **INTRODUCTION**

1.    Amazon sells and distributes retail products to consumers on Amazon's own behalf and in conjunction with partner sellers through a profitable joint venture arrangement.  Amazon public statements and policies emphasize that Amazon is responsible for ensuring the safety of consumers who purchase any of the products available through Amazon platforms and that this responsibility includes a duty to timely provide consumers with accurate information about products and the risks

1

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

associated with their anticipated uses.  But when it came to its sales of nitrous oxide canisters, Amazon shirked its duties by, among other things, failing to provide consumers with accurate information about risks that would result from product uses Amazon did or should have reasonably anticipated.

2.    Inhaling nitrous oxide produces a short but powerful euphoric high.  It can be safely administered under a doctor's care in a legitimate medical setting for anesthetic purposes.  But when consumed recreationally by unsupervised individuals, it presents a host of serious health and safety risks.  Defendants knew these risks, ignored them, and sold nitrous oxide canisters to the public in a format or volume that facilitated and encouraged consumers to ingest massive and dangerous doses of pure nitrous oxide, unmixed with the oxygen the reduces harm potential in a clinical setting.  To take advantage of a legal loophole, Defendants claimed their products were intended for culinary use. They were not.

3.    Defendants intended their products to be inhaled by consumers for recreational purposes and marketed them accordingly.  Defendants provided limited and inadequate information about the dangers associated with nitrous oxide inhalation.  Defendants provided no information about the addictive potential of nitrous oxide inhalation.

4.    Defendants' marketing efforts succeeded, and nitrous oxide-related injuries and diseases spiked as a result.  So, too, did reports of nitrous oxide addiction.  Plaintiff is one of the consumers who has been harmed by Defendants' conduct, having sustained serious injuries as a result of using Defendants' products in the manner they anticipated and encouraged.  This suit seeks redress for those injuries.

2

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

# PARTIES

## PLAINTIFF

5.      Plaintiff Felix Krouse is a citizen and resident of the State of New York. Plaintiff has suffered personal injuries in the form of vitamin B12 deficiency, tremors, imbalance, abnormal gait, occipital neuralgia, and memory loss because Plaintiff ingested nitrous oxide that was manufactured, promoted, sold, distributed, or supplied by Defendants.

## DEFENDANT

6.      AMAZON.COM Services LLC ("Amazon Services") is a limited liability company organized in Delaware with its principal place of business in Seattle, Washington. At all relevant times, Amazon Services was engaged in the business of marketing, promoting, selling, and/or distributing nitrous oxide-filled canisters. Upon information and belief, Amazon Services is a wholly owned subsidiary of Amazon Inc.

7.      AMAZON.COM, INC. ("Amazon Inc." and collectively with Amazon Services, "Amazon") is a Delaware corporation with its principal place of business in Seattle, Washington. At all relevant times, Amazon was engaged in the business of marketing, promoting, selling, and/or distributing nitrous oxide-filled canisters.

8.      Happy Supply, LLC (d/b/a "Cream N2O") is a California LLC with its principal place of business in Santa Ana, California. At all relevant times, Cream N2O was engaged in the business of manufacturing, formulating, marketing, promoting, selling, and/or distributing nitrous oxide-filled canisters.

9.      Galaxy Gas, LLC is a Georgia LLC with its principal place of business in Kennesaw, Georgia. At all relevant times, Galaxy Gas was engaged in the business of manufacturing, formulating, marketing, promoting, selling, and/or distributing nitrous oxide-filled canisters.

3

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

## JURISDICTION

10.    This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a).  Plaintiff and each Defendant are citizens of different states.  Plaintiff is seeking damages and other relief in amount that exceeds $75,000, exclusive of interest and costs.

11.    Venue is appropriate in this district under 28 U.S.C. § 1391(b) because Amazon resides in this district.  Venue is further appropriate in this district because Defendants sold or distributed products out of this district so that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

**A.    AMAZON IS A RETAILER THAT PUBLICLY CLAIMS TO EMBRACE ITS RESPONSIBILITY FOR ENSURING CONSUMER SAFETY.**

12.    Amazon sells and distributes a vast array of consumer goods.  Amazon sells some of these products from its own inventory.  And for others, it sells products in conjunction with partner sellers under a joint venture arrangement under which Amazon receives a share of revenue or fees for products sold and distributed.

13.    Amazon describes itself as a "store" in public facing documents directed at its customers and partner sellers.

14.    For both products sold out of its own inventory and products sold in conjunction with partner sellers, Amazon has sole discretion over which products it chooses to offer; communicates with customers; maintains and curates customer reviews; modifies or suspends sales listing; calculates, charges, and remits sales tax; enforces product recall notifications; controls partner seller access to customer information; maintains physical custody of products in warehouses controlled by Amazon; controls the shipping and delivery process of products; and processes

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

refunds and returns of products under a policy administered under Amazon's sole discretion.

15.   Amazon retains sole discretion to cease offering products by any partner seller, to select what products can and cannot be sold through the Amazon platforms, and to ban classes of products from sale on the Amazon platforms.

16.   Amazon acts as a product seller and distributor of all products available for purchase on the Amazon platforms.

17.   Amazon holds itself out as embracing its responsibility for ensuring consumer safety for all the products it sells and distributes.  Amazon makes and publicizes statements to this effect.

18.   Amazon claims that Amazon's goals with respect to the products Amazon sells include ensuring that they are "inherently safe when they were manufactured, that they remain safe when they are delivered, and that the customer knows how to use the products appropriately to ensure their continued safety."

19.   Amazon claims that Amazon's goals include "[p]reventing unsafe products from getting into the hands of customers."

20.   Amazon claims that Amazon has "robust policies and processes in place to make sure the products [sellers] want to list for sale meet applicable compliance and safety requirements" and that it "continuously monitor[ing] our store for potentially unsafe or noncompliant products, including when we receive new information from sellers about products and brands, and from safety and regulatory bodies."

21.   Regarding product recalls and other safety alerts, Amazon claims that Amazon does not "believe it's sufficient to simply post a notice or issue a press release about a recall, so we email and notify customers directly when we become aware of a product recall or other safety issue."  Towards this end, Amazon

5

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

maintains a "Recalls and Product Safety Alerts" section on its website that purports to make available information that would be relevant to assessing consumer safety for specific products.

22.    Amazon failed to live up to its own consumer safety policies when it came to the sale and distribution of nitrous oxide canisters.

**B.    NITROUS OXIDE USES AND RISKS.**

23.    Nitrous oxide is an odorless, colorless gas.  In the late 18th century, it was discovered that inhaling nitrous oxide produces psychoactive effects in humans. Its recreational use potential was recognized almost immediately upon that discovery. Since then, people have inhaled nitrous oxide recreationally to induce euphoric and dissociative feelings.

24.    Near the middle of the 19th century, scientists learned that nitrous oxide inhalation also can anesthetize humans to pain.  Medical professionals now regularly use nitrous oxide as an anesthetic in dentistry and other clinical settings.  When used clinically, a 30-50% concentration of nitrous oxide mixed with oxygen is administered via inhalation by a face mask.  This is for safety.  Nitrous oxide, once inhaled, displaces oxygen in the body. Administering nitrous oxide combined with oxygen reduces the risk of harms associated with oxygen deprivation.

25.    Recreational users often consume nitrous oxide by inhaling the gas from balloons that are filled from tanks intended for use in a medical setting or nitrous oxide canisters intended for use in a culinary setting.  The balloons serve as an intermediary that allows the gas to warm before inhalation because gas emerges from pressurized sources cold enough to damage vocal cords, lungs, or other tissue.  When inhaled in this manner, nitrous oxide is ingested in pure or close to pure form, unlike inhalation in a clinic setting where nitrous oxide is mixed with an appropriate concentration of oxygen.

6

COMPLAINT CASE NO. _____

26.     When inhaled in pure form, without combination with an appropriate concentration of oxygen, nitrous oxide results in diminished blood oxygen levels or hypoxia.  Hypoxia can cause numerous negative health outcomes including damage to the brain, heart, or other organs, sometimes severe enough to cause death.

27.     Chronic nitrous oxide inhalation disrupts vitamin B12 metabolism, causing B12 deficiency.  Vitamin B12 deficiency in turn interrupts the body's ability to engage in the methylation of myelin proteins, leading to the demyelination of nerve cells.  Myelin is a protective cover that surrounds nerve cells in the body's central and peripheral nervous system.  Demyelination refers to the destruction or degradation of myelin, which leaves nerve cells exposed and vulnerable.  Demyelination causes many negative and serious health outcomes including vision impairment or loss; muscle weakness and fatigue; impaired coordination; diminished or painfully intensified sensitivity to touch; cognitive impairment; and depression.

28.     Because nitrous oxide inhalation also introduces dissociative and disorienting feelings, it poses a risk for acute physical injury from falls or other mishaps should the user attempt to stand, walk, or operate machinery while under its effects.

29.     Inhalation of nitrous oxide directly from a pressurized source can severely damage tissue in the form of frostbite to the lips, mouth, throat, vocal cords, and lungs.

30.     The FDA has summarized the risks associated with recreational nitrous oxide use:

> Inhaling nitrous oxide can result in a range of symptoms and serious health problems, from abnormal blood counts, asphyxiation, blood clots, frostbite, headache, impaired bowel and bladder function, lightheadedness, limb weakness, loss of consciousness, numbness, palpitations, paralysis, psychiatric disturbances (delusions, hallucinations, paranoia, depression), tingling, trouble walking, vitamin B12

7

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

> deficiency, and in some cases, death. For some individuals who regularly inhale nitrous oxide, this habit can lead to prolonged neurological effects, including spinal cord or brain damage, even after stopping use.

U.S. Food & Drug Administration, FDA Advises Consumers Not to Inhale Nitrous Oxide Products, https://www.fda.gov/food/alerts-advisories-safety-information/fda-advises-consumers-not-inhale-nitrous-oxide-products.

31.    Medical literature has documented deaths and diseases attributable to recreational use of nitrous oxide for decades.  Despite this, most recreational nitrous oxide users are unaware of its harm potential.  One study found that 77% of users reported ignorance of the potential harmful effects of nitrous oxide inhalation.

32.    The psychoactive effect of nitrous oxide is short-lived but intense, which can precipitate frequent and heavy use or, in some cases, addiction.  Medical literature reports cases of persons inhaling the daily equivalent of dozens or hundreds of nitrous chargers for months on end.

33.    When used as a drug, the Federal Food Drug, and Cosmetic Act classifies nitrous oxide as a "designated medical gas" and imposes labeling, use, and other requirements or restrictions.  *See* 21 U.S.C. §§ 360ddd(1)(C); 360ddd-1.  These regulations limit the availability of nitrous oxide intended for medical use, rendering it less accessible to would-be recreational users.  But when used in food as a propellant and aerating agent, nitrous oxide is subject to "no limitations other than current good manufacturing practice."  21 C.F.R. § 184.1545 (promulgated Feb. 14, 2008).

34.    Nitrous oxide's most well-known culinary use is charging whipped cream dispensers.  Filling a whipped cream dispenser with pressurized nitrous oxide aerates the contents and supplies the aerosol propellant needed to dispense it.  Whipped cream dispensers generally hold between 0.5 and 1.0 liters of contents and are filled by small, single use capsules—known as chargers—that release between 8

8

COMPLAINT CASE NO. _____

to 16 grams of nitrous oxide into the dispenser.  One to two chargers is sufficient to charge a whipped cream dispenser.  A box of chargers is depicted below.



35.    Previously, size and cost constraints associated with traditional nitrous chargers provided some obstacles to recreational abuse.  Each charger capsule needs to be opened or "cracked" individually and emptied into a balloon before consumption.  Chargers retail for between $0.50 to $1.50 each.

### C.    DEFENDANTS BEGIN SELLING A NEW AND DANGEROUS PRODUCT.

36.    Things changed in the late 2010s when companies, including Manufacturing Defendants, began manufacturing, and Amazon began marketing, and distributing much larger nitrous oxide canisters.

37.    This new type of nitrous oxide canister ranges in size up to 3.3 liters in volume or 2000 grams of nitrous oxide.  The canisters are often brightly colored and adorned with eye-catching graphics intended to capture the attention of young people or children.  Unlike traditional nitrous chargers that are genuinely intended for culinary use and unflavored—whipped cream is flavored by adding fruit puree or other ingredients to a heavy cream base—these containers bear nitrous oxide gas in a variety of candy-like flavors such as watermelon, strawberry, or blueberry.  A

9

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

representative image of this new type of charger—obtained from an Amazon web page—is below.



38.    According to Amazon, these watermelon-flavored nitrous oxide containers contain 2,000 grams of nitrous each.  Amazon offered them for sale as a six-pack for $305.88.

39.    In contrast, Amazon also offered for sale the above-depicted 10-pack of traditional nitrous charger capsules for $16.95.  Purchasing the charger capsules equates to a $0.13 per gram of nitrous oxide.  Purchasing the 2,000 gram canister six-pack equates to $0.03 per gram of nitrous oxide.  The larger canister format makes nitrous oxide available to consumers at less than one fifth the price per unit.

40.    A six-pack of 2,000 gram nitrous oxide containers would supply enough nitrous oxide to charge more than 1,400 whip cream dispensers.  It is implausible that any individual consumer would have a culinary need for that volume of nitrous oxide.

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

41.    Manufacturing Defendants' products are similar.  They are high volume canisters sold in eye-catching packaging and are infused with candy-like flavors.  Below is an image of a six-pack of 2.2 liter/1,100 gram nitrous oxide canisters in blue raspberry, mango smoothie, tropical punch, vanilla cupcake, strawberry cream, blueberry mango, and watermelon lemonade flavors.



42.    The websites for restaurant supply businesses like Sysco, US Foods, and Webstaurant Store all list for sale traditional nitrous oxide charger capsules containing around 8 grams each of nitrous oxide.  None list for sale enormous, colorful containers of nitrous oxide like those depicted above.  Nor do they offer to sell flavored nitrous oxide of any kind.

43.    Smoke shops and gas stations, on the other hand, do regularly stock large canisters of flavored nitrous oxide.

44.    Some big box retailers, like Target and Walmart, have offered for sale large canisters of flavored nitrous oxide but did so only through their online electronic commerce platforms and not via their brick-and-mortal retail locations.  On information and belief, this choice reflected those retailers' awareness that selling these products was irresponsible and dangerous.  Notably, Target and Walmart

11

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

appear to have ceased selling large canisters of nitrous oxide or flavored nitrous oxide.

45.    Comments regarding Defendants' nitrous oxide canister products on electronic commerce sites maintained by Amazon reference the true intended purpose of those products: the recreational inhalation of nitrous oxide to experience psychoactive effects.

46.    An Amazon review for a 2.2 liter tank of nitrous oxide sold under the Galaxy Gas brand stated "Stuff gives me a rush of dopamine and euphoric relief as it kills my brain cells and massages the back of brain."

47.    An Amazon review for a 670-gram tank of nitrous oxide sold under the Exotic Whip brand stated "This stuff is really clean.  if you are using it for Balloons, you don't need to buy the regulator.  a small white tip comes with each bottle for that. heh heh."  Balloons are used to facilitate the inhalation of nitrous oxide and have no role in the culinary use of nitrous oxide.

48.    An Amazon review for a 2,000 gram tank of nitrous oxide sold under the Prime Whip brand was titled "Tastes like medical grade" and stated "If you are familiar with using a nitrous tank you will appreciate this product.  It is like having a mini tank for home use -perfect for a small social occasion. Also, if you are familiar with using a nitrous tank, you should already know how to take care when you use it. Please enjoy responsibly."

49.    An Amazon review for a 640 gram tank of flavored nitrous oxide sold under the Prime Whip brand advised readers "[d]on't buy the flavored tanks" because "it's gross to breathe in once the included filter gets overwhelmed" and because "[t]here is definitely less NO2 in the" flavored tanks and "effects-wise it's a noticeable difference."

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

50.    These and similar reviews made it crystal clear to Defendants that consumers were inhaling their products in order to feel psychoactive effects.

51.    Amazon also sold "dispenser nozzles" for attachment to the nitrous oxide canisters and promoted them as intended for use together by featuring nozzles as "Products related to this item" on product pages for nitrous oxide canisters.



52.    These nozzles were intended for venting nitrous oxide from the canisters sold or supplied by Amazon into a balloon to be inhaled moment later or, more dangerously, directly into a consumer's mouth or lungs.  That intent was made clear in several ways.  For one, some of the nozzles sold by Amazon were themselves promoted as candy or fruit flavored, making clear that they were for being placed in one's mouth.

13

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220



53.    Product images associated with the nozzles showed them being used to vent gas, not dispense whipped cream.



54.    Nothing in the nozzle product descriptions attempted to explain what role such a nozzle would play in dispensing whip cream.  That is because they have no such role in that process.

55.    Likewise, consumer comments for the nozzles sold by Amazon referred to their true intended purpose: the recreational inhalation of nitrous oxide.  One such comment stated "So this is an amazing idea. I thought these would work as universal

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

crackers. Turns out they don't work great with the smaller no2 canisters. No biggie. Still they smell and taste fruity." A "cracker" is slang for a mechanical device that allows the user to break the seal on a traditional nitrous charger capsule and empty its contents into a balloon.

56. Using a nozzle to directly consume nitrous oxide from nitrous oxide canisters is dangerous. It increases the risk of frostbite to the lips, mouth, throat, vocal cords, and lungs. And, in contrast to the use of gas-filled balloons, it allows for near-continuous inhalation of nitrous oxide, greatly increasing risks associated with hypoxia and chronic nitrous oxide consumption.

57. As mentioned above, Amazon also sells traditional nitrous oxide chargers that hold between 8 and 16 grams of unflavored nitrous oxide per capsule. Unlike the new type of large nitrous oxide canister, chargers are legitimately used for culinary purposes. Upon information and belief, Amazon makes no effort to monitor and identify sales patterns to individual consumers that indicate its nitrous oxide chargers will be inhaled recreationally rather than put to culinary use.

58. The conduct of Defendants promotes the dangerous practice of directly inhaling nitrous oxide from very large capacity nitrous oxide canisters.

59. Any claim of culinary use by Defendants is a fig leaf deployed to maintain a veneer of legitimacy for their nitrous oxide large canister products.

60. Defendants expected that consumers would use their nitrous oxide canister products to recreationally inhale nitrous oxide.

61. Defendants' profit model for their large nitrous oxide canister products depended on consumers' recreational inhalation of nitrous oxide because there is no meaningful market for large, flavored nitrous oxide canisters outside of that use.

62. Public health officials noted a marked increase in reported cases of recreational nitrous oxide abuse and related injuries in the period following the

15

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

introduction to the market of this new type of much larger, flavored nitrous oxide canister.

63.     Certain states have responded to the public health risks associated with recreational inhalation of nitrous oxide by enacting legislation prohibiting the inhalation of nitrous or imposing limits on the weight or volume of nitrous oxide that may be lawfully distributed.  E.g., Fl. Stat. 877.11 (distribution of more than 16 grams of nitrous oxide is unlawful); NY Pub. Health § 3380(5) (regulating the sale and use of nitrous oxide and banning sales to persons under the age of 21); Ind. Code Ann. § 35-46-6-3 (limiting the sale of flavored nitrous).

### D.     DEFENDANTS FAIL TO WARN CONSUMERS OF DANGERS.

64.     Defendants knew or should have known that the large canisters of nitrous oxide they were manufacturing, promoting, or distributing were being purchased for recreational use via inhalation.

65.     Based on sales patterns including frequency and volume of purchase, Amazon knew or should have known its traditional nitrous oxide charger canisters were being purchased by certain of their customers for recreational use via inhalation.

66.     Defendants made inadequate efforts to warn consumers about the risks associated with the recreational use of their products such as injury or death.  While some nitrous oxide canister manufacturers included generic "DO NOT INHALE" admonishments on their packaging, none included warnings with sufficient information to allow consumers to make informed decisions regarding the inhalation of nitrous oxide.

67.     Defendants failed to provide consumers with information about specific diseases or injuries that could result from consuming the nitrous oxide in the manner Defendants expected.

16

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

68. Defendants failed to advise consumers that inhaling the nitrous oxide canisters in the manner Defendants expected—directly from the canister or from a balloon but, in either case, unmixed with oxygen—would place consumers at risk for hypoxia or asphyxiation and injuries associated with those conditions.

69. Defendants failed to advise consumers that inhaling the nitrous oxide canisters in the manner Defendants expected—directly from the canister or from a balloon but, in either case, unmixed with oxygen—would place consumers at risk for demyelination or other damage to the nervous system.

70. Defendants failed to advise consumers as to the addictive potential of recreational nitrous oxide inhalation.

71. In March 2025, the FDA issued a warning advising "consumers not to inhale nitrous oxide products from any size canisters, tanks, or chargers." The FDA Advisory listed numerous specific brands associated with large canisters of nitrous oxide purportedly being sold for culinary use but actually intended for human recreational use. The FDA Advisory specifically advised that Amazon was a conduit for the sale of these products, and Amazon offered for sale many of the specific brands identified in the FDA Advisory. The FDA Advisory specifically named Galaxy Gas as a brand manufacturer of these products.

72. After the FDA Advisory, Defendants continued to manufacture, promote, and distribute these products without warning consumers of the dangers associated with recreational inhalation of nitrous oxide. Manufacturing Defendants did not amend their packaging to disclose the risks highlighted by the FDA. Amazon did not amend their electronic commerce sites to disclose the risks highlighted by the FDA.

17

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

73.    After the FDA Advisory, the Amazon "Recalls and Product Safety Alerts" page included no information about the dangers associated with the inhalation of nitrous oxide or mention of the FDA Advisory.



74.    After the FDA Advisory, Amazon continued to promote and distribute these products, including products directly named in the March 2025 FDA advisory.

75.    After the FDA Advisory, Amazon continued to not monitor or identify sales patterns of traditional nitrous oxide chargers that were consistent with recreational inhalation.

18

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

### E.   PLAINTIFF SUFFERED INJURIES FROM CONSUMING DEFENDANTS' PRODUCTS.

76.   Plaintiff Felix Krouse purchased and consumed nitrous oxide canister products that were marketed, promoted, sold, or distributed by Defendants and was injured as a result.

77.   From March 2022 to January 2025, Plaintiff consumed nitrous oxide products including those produced by Manufacturing Defendants.

78.   During this same time, Plaintiff purchased from Amazon and consumed large nitrous oxide canister products or purchased from Amazon and consumed traditional nitrous oxide chargers in a volume and frequency that could only have been consistent with persistent recreational use rather than culinary use.  At no time did Amazon attempt to intervene, limit Plaintiff's purchases, or adequately warn Plaintiff about the risks associated with inhaling nitrous oxide.

79.   Plaintiff used Defendants' nitrous oxide products daily.

80.   None of the Defendants provided adequate public information about risks associated with the inhalation of nitrous oxide.

81.   Plaintiff was not aware of the risks associated with the recreational use of nitrous oxide.  Instead, Plaintiff believed that Defendants' nitrous oxide products were safe or presented limited and reasonable risk when used recreationally.

82.   As a result of Plaintiff's use of Defendants' nitrous oxide products, Plaintiff suffered medical harms.

83.   Plaintiff developed vitamin B12 deficiency, tremors, imbalance, abnormal gait, occipital neuralgia, and memory loss Plaintiff with these symptoms in 2025.

84.   Medical professionals treated Plaintiff's nitrous oxide-derived diseases and symptoms.

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

85.    Plaintiff received vitamin B12 supplements and medication.  These treatments began in or around 2025.

86.    At all relevant times, Defendants knew or should have known that there was a substantial likelihood that consumers who purchased their products, like Plaintiff, would use those products recreationally by inhaling nitrous oxide and that doing so would put them at significant risk of suffering injuries such as those detailed above.

87.    Despite this, Defendants failed to include in packaging or promotional materials adequate warnings regarding the risks of inhaling nitrous oxide or to otherwise communicate these risks, including to Plaintiff.

88.    Despite this, Amazon failed to include on their electronic commerce website and related platforms adequate warnings regarding the risks of inhaling nitrous oxide or to otherwise communicate these risks, including to Plaintiff.

89.    Nor did Amazon take any steps to monitor the volume or frequency of Plaintiff's nitrous oxide purchases or intervene—by limiting sales, providing an adequate warning of the harms associated with nitrous oxide inhalation, or other means—once the volume and frequency of Plaintiff's nitrous oxide purchases clearly indicated those products were being purchased for recreational inhalation rather than culinary use.

90.    Defendants thus failed to adequately warn Plaintiff about the risks of developing injuries from inhaling nitrous oxide.

91.    Had Plaintiff known the risks associated with nitrous oxide inhalation, Plaintiff would have avoided, limited, or modified the means of nitrous oxide inhalation.

92.    As a direct and proximate cause of Defendants' conduct, Plaintiff suffered serious and permanent injuries in the form described above.

20

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

93. In addition, as a direct and proximate cause of Defendants' conduct, Plaintiff has suffered damages and harm, including but not limited to, emotional distress and other economic harm associated with loss of earnings.

94. As a direct and proximate result of the acts and omissions of Defendants, and Plaintiff's use of nitrous oxide, Plaintiff has been prevented from pursuing normal activities and employment, experiences severe pain and suffering and mental anguish, and has been deprived of ordinary pursuits and enjoyments of life, and has and/or will suffer diminution of earnings as a result.

## PUNITIVE DAMAGES ALLEGATIONS

95. Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice. Defendants were fully aware that their nitrous oxide canister products would be consumed recreationally by humans and of the safety risks associated with that consumption. Nonetheless, Defendants deliberately promoted and marketed their products in a manner to encourage human consumption and without adequately warning about the injuries that could result from nitrous oxide consumption. Defendants' conduct was carried out with a willful and conscious disregard for Plaintiff's safety and subjected Plaintiff to cruel and unjust hardship. Defendants' conduct and callous disregard for the safety of Plaintiff was so mean, vile, base, and contemptible that it would be looked down on and despised by reasonable people.

96. This was not done by accident or through some justifiable negligence. Rather, Defendants knew they could profit by selling nitrous oxide to consumers for recreational consumption. By declining to include adequate warnings of the risks of injuries associated with nitrous oxide consumption, Defendants denied consumers such as Plaintiff the right to make an informed decision about whether to consume nitrous oxide at all or whether the volume or manner of their consumption could

21

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

subject them to risk of severe injury. Defendants' conduct was done with conscious disregard of Plaintiff's rights and well-being.

97. Even now, the Defendants continue to sell their nitrous oxide products without adequate warning about the risks of human inhalation of those products.

98. Defendants' conduct, as described above, was committed with knowing, conscious, careless, reckless, willful, wanton, malicious, and deliberate disregard for the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future. Plaintiff may also require additional medical and/or hospital care, attention, and services in the future.

99. Accordingly, Plaintiff requests punitive damages against Defendants for the harms caused to Plaintiff.

## COUNT I:  STRICT PRODUCTS LIABILITY—FAILURE TO WARN
### (Against All Defendants)

100. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

101. Defendants are strictly liable for injuries incurred by Plaintiff through their use of nitrous oxide canisters manufactured by the Defendants because the nitrous oxide canisters were not reasonably safe in construction or were not reasonably safe because they did not conform to the applicable express or implied warranties.

102. To the extent applicable law limits certain theories of liability to manufacturers and not to sellers, Amazon has the liability of a manufacturer— including strict liability for product that was not reasonably safe in construction and/or not reasonably safe because it did not conform to the manufacturer's express or implied warranties—because, upon information and belief, certain manufacturers of nitrous oxide canisters sold by Amazon to Plaintiff are not solvent or are not

22

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

subject to service under the laws of the applicable Plaintiff's domicile or state of Washington; and because it is highly probable that Plaintiff would be unable to enforce a judgment against those manufacturers.

103.   The relevant nitrous oxide canisters were not reasonably safe because no adequate warnings were provided with the product. At the time of manufacture, the likelihood that the product would cause Plaintiff's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of Defendants. Defendants could have provided the warnings or instructions that would have been adequate to minimize or eliminate the risk and vulnerability of product users, and Plaintiff would have heeded such warnings and instructions.

104.   A manufacturer or distributor has a duty to adequately warn of the potential risks or hazards associated with a product where there is unequal knowledge, actual or constructive of a dangerous condition, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given.

105.   At all relevant times, the nitrous oxide canisters purchased or consumed by Plaintiff were under the exclusive control of their respective manufacturers, including Manufacturing Defendants.  Manufacturers including Manufacturing Defendants designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and/or sold nitrous oxide canisters, including those ingested by Plaintiff.

106.   At all relevant times, Amazon had control over nitrous oxide canisters sold through their websites and other retail channels. Amazon had control over how nitrous oxide canister products appeared on their websites and what text, graphics, and other promotional materials appeared alongside them.  Amazon also sold and

23

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

distributed nitrous oxide canister products to consumers, including those products ingested by Plaintiff.

107. Defendants had an ongoing duty to the consuming public in general, and Plaintiff in particular, to provide adequate warnings or instructions about the risks and latent dangers associated with the consumption by inhalation of the nitrous oxide products they sold to consumers.

108. Manufacturing Defendants shirked its duty to warn the consuming public, including Plaintiff, because it included inadequate warnings about the risks to human health associated with the consumption of nitrous oxide on the nitrous oxide canisters or related packaging.

109. Nor did Amazon include adequate warnings about the risks to human health associated with the consumption of nitrous oxide on the websites or other modes of electronic commerce through which the nitrous oxide canister products were sold.

110. Nor did Amazon take any steps to monitor the volume or frequency of Plaintiff's nitrous oxide charger purchases or intervene—by limiting sales, providing an adequate warning of the harms associated with nitrous oxide inhalation, or other means—once the volume and frequency of Plaintiff's nitrous oxide charger purchases clearly indicated those products were being purchased for recreational inhalation rather than culinary use.

111. Any warnings that accompanied Defendants' nitrous oxide canister products were so general as to fail to provide the level of information that an ordinary consumer would expect when using the product in a manner reasonably foreseeable to Defendants.

112. Defendants' promotional activities—including packaging nitrous oxide canisters in bright eye-catching graphics and promoted their candy-like flavorings in

24

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

a manner they knew would make their products seem safe, appealing, and fit for human consumption by inhalation—further diluted or minimized any warnings given with their products by misrepresenting the safety and risks of their products to advance their own financial interests.

113. Plaintiff was a foreseeable user of Defendants' products.

114. At all relevant times, Plaintiff used Defendants' products in a manner that could be reasonably foreseen by Defendants.

115. Plaintiff did not know and could not have reasonably been expected to know of the risks associated with recreational inhalation of nitrous oxide.

116. At the time Plaintiff used Defendants' nitrous oxide canister products, the products were unreasonably dangerous because of these products' inadequate warnings.

117. If Defendants had provided Plaintiff proper or adequate warnings and/or instructions of the risks of using their nitrous oxide products, Plaintiff would have read and heeded those warnings and/or instructions. As a result, Plaintiff would have avoided, limited, or modified the means of nitrous oxide inhalation and, as a result, avoided injury.

118. Defendants' lack of adequate warnings and instructions accompanying their products was a substantial factor in causing Plaintiff's injuries.

119. As a direct and proximate result of Defendants' failure to provide adequate warnings of the risks of their products, Plaintiff has been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for compensatory damages, together with interest, costs herein

25

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT II: NEGLIGENCE

### (Against All Defendants)

120.   Plaintiff incorporates preceding paragraphs 1 through 99 as if fully stated herein.

121.   Defendants manufactured, distributed, marketed, and/or sold nitrous oxide canisters, including those ingested by Plaintiff.

122.   To the extent applicable law limits certain theories of negligence liability to manufacturers and not to sellers, Amazon has the liability of a manufacturer in such jurisdictions because, upon information and belief, certain manufacturers of nitrous oxide canisters sold by Amazon to Plaintiff are not solvent or are not subject to service under the laws of the applicable Plaintiff's domicile or state of Washington; and because it is highly probable that Plaintiff would be unable to enforce a judgment against those manufacturers.

123.   At all relevant times, Amazon had control over nitrous oxide canisters sold through their websites and other retail channels. Amazon had control over how nitrous oxide canister products appeared on their websites and what text, graphics, and other promotional materials appeared alongside them.  Amazon also sold and distributed nitrous oxide canister products to consumers, including those products ingested by Plaintiff.

124.   At all relevant times, Defendants had a duty to design, label, package, manufacture, test, distribute, and sell their nitrous oxide canister products with reasonable and due care for the safety and well-being of the consuming public in general, and Plaintiff in particular, who were subject to and used the product.

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

125. Nitrous oxide can cause injury when inhaled. Defendants knew or should have known about these risks and warned consumers about same.

126. Defendants' nitrous oxide canister products and associated packaging fail to provide adequate warnings of the various risks associated with human consumption of nitrous oxide. Amazon did not include adequate warnings about the risks to human health associated with the consumption of nitrous oxide on the websites or other modes of electronic commerce through which the nitrous oxide canister products were sold. The warnings that accompanied Defendants' nitrous oxide container products thus failed to provide the level of information that an ordinary consumer would expect when using the product in a manner reasonably foreseeable to Defendants.

127. The nitrous oxide canisters sold by Defendants were also not reasonably safe because no adequate warnings or instructions were provided with the product. At the time of manufacture, the likelihood that the product would cause Plaintiff's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate.

128. The nitrous oxide canisters sold by Defendants were also not reasonably safe because adequate warnings or instructions were not provided after the product was manufactured. Based on the FDA Advisory and other factors, Defendants learned, or a reasonably prudent manufacturer or seller should have learned, about the danger connected with the nitrous oxide canisters after they was manufactured; without adequate warnings or instructions, the product was unsafe to an extent beyond that which would be contemplated by an ordinary user; and Defendants failed to issue warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances.

27

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

129.    Nor did Amazon take any steps to monitor the volume or frequency of Plaintiff's nitrous oxide charger purchases or intervene—by limiting sales, providing an adequate warning of the harms associated with nitrous oxide inhalation, or other means—once the volume and frequency of Plaintiff's nitrous oxide charger purchases clearly indicated those products were being purchased for recreational inhalation rather than culinary use.

130.    Defendants therefore breached their duty to consumers, including Plaintiff, to communicate the risks associated with inhalation of nitrous oxide.

131.    Plaintiff was foreseeable user of Defendants' nitrous oxide canister products.

132.    Defendants' nitrous oxide products, when ingested by Plaintiff were in the same condition as when they were designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold by Defendants.

133.    Plaintiff did not know and could not have reasonably been expected to know of the risks associated with inhalation of nitrous oxide.

134.    Plaintiff inhaled Defendants' nitrous oxide canister products, which caused to develop the symptoms and diseases described above.

135.    Plaintiff's injuries were reasonably foreseeable to Defendants because they knew or should have known that inhalation of nitrous oxide could cause health injuries including the symptoms and diseases described above and that the minimal warnings disseminated with their products failed to communicate warnings and instructions that were appropriate and adequate to render these products safe for their reasonably foreseeable uses.

136.    Had Defendants used reasonable care in communicating adequate warnings and/or instructions of the risks of using their products, Plaintiff would have read and heeded those warnings and/or instructions.  As a result, Plaintiff would have

28

COMPLAINT CASE NO. _____

avoided, limited, or modified the means of nitrous oxide inhalation and, as a result, avoided injury.

137. Defendants' lack of adequate warnings and instructions accompanying their products was a substantial factor in causing Plaintiff's injuries.

138. As a direct and proximate result of Defendants' failure to provide adequate warnings of the risks of their products, Plaintiff has been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost wages, loss of future earning capacity, and other damages.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT III: BREACH OF IMPLIED WARRANTY
### (Against All Defendants)

139. Plaintiff incorporates preceding paragraphs 1 through 99 as if fully stated herein.

140. Defendants are liable for injuries incurred by their breach of implied warranty in connection with Plaintiff's use of the nitrous oxide canisters manufactured by the Manufacturing Defendants.

141. To the extent applicable law limits certain theories of liability to manufacturers and not to sellers, Amazon has the liability of a manufacturer—including liability for breach of implied warranty—because, upon information and belief, certain manufacturers of nitrous oxide canisters sold by Amazon to Plaintiff are not solvent or are not subject to service under the laws of the applicable

29

Plaintiff's domicile or state of Washington; and because it is highly probable that Plaintiff would be unable to enforce a judgment against those manufacturers.

142.    At all relevant times, Defendants manufactured, distributed, marketed, sold and/or otherwise released into the stream of commerce the nitrous oxide canister products.

143.    At all relevant times, Amazon had control over nitrous oxide canisters sold through their websites and other retail channels. Amazon had control over how nitrous oxide canister products appeared on their websites and what text, graphics, and other promotional materials appeared alongside them.  Amazon also sold and distributed nitrous oxide canister products to consumers, including those products ingested by Plaintiff.

144.    At all relevant times, Defendants expected consumers to purchase and inhale their nitrous oxide canister products, and Defendants impliedly warranted these products to be of merchantable quality and fit for such use.

145.    Plaintiff was a foreseeable user of Defendants' nitrous oxide canister products.

146.    Defendants knew or had reason to know that Plaintiff would rely on Defendants' judgments and representations regarding the safety of their nitrous oxide canister products for human inhalation.

147.    Defendants' nitrous oxide canister products were expected to reach and did reach consumers, including Plaintiff, without substantial change in the condition in which the products were manufactured and sold by Defendants.

148.    Defendants breached various implied warranties with respect to their nitrous oxide canister products in that these products were not fit for their expected use, and specifically, that Defendants represented that these products were safe for

30

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

human inhalation and would not cause diseases and symptoms, including those afflicting Plaintiff as described above, when so consumed.

149.    In reliance upon Defendants' implied warranties, Plaintiff ingested Defendants' nitrous oxide canister products, in the manner foreseen by Defendants.

150.    Defendants' breach of their implied warranties regarding their nitrous oxide canister products was a substantial factor in causing Plaintiff's injuries.

151.    As a direct and proximate result of Defendants' breach of implied warranties regarding their nitrous oxide canister products, Plaintiff has been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT IV: STRICT LIABILITY FOR DESIGN DEFECT

### (Against All Defendants)

152.    Plaintiff incorporates preceding paragraphs 1 through 99 as if fully stated herein.

153.    Defendants, as the manufacturers and/or sellers of the nitrous oxide canister products, owed a duty to the consuming public in general, and Plaintiff in particular, to manufacture, sell, and distribute their products in a manner that was not unreasonably dangerous.

154.    Defendants are liable for injuries caused by the nitrous oxide canisters being not reasonably safe as designed for its expected use.  The likelihood that the nitrous oxide canisters would cause Plaintiff's harm or similar harms, and the

31

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

seriousness of those harms, outweighed the burden Defendants to design a product or provide instructions on product use that would have prevented those harms and the adverse effect that an alternative design or instruction that was practical and feasible would have on the usefulness of the product.

155.    To the extent applicable law limits certain theories of liability to manufacturers and not to sellers, Amazon has the liability of a manufacturer in such jurisdictions because, upon information and belief, certain manufacturers of nitrous oxide canisters sold by Amazon to Plaintiff are not solvent or are not subject to service under the laws of the applicable Plaintiff's domicile or state of Washington; and because it is highly probable that Plaintiff would be unable to enforce a judgment against those manufacturers..

156.    Defendants also owed a duty to the consuming public in general, and Plaintiff in particular, to manufacture, sell, and distribute their products in a manner that was merchantable and reasonably suited for their intended use.

157.    Defendants knew that their nitrous oxide canister product would be used by consumers to recreationally inhale nitrous oxide and knew (or reasonably should have known) that this use significantly increased the risk of serious injuries including diseases and symptoms, including those afflicting Plaintiff as described above, and that such use was therefore unreasonably dangerous, not reasonably suited for the use intended, not merchantable, and had risks that exceeded a reasonable buyer's expectations.  Nonetheless, they continued to sell and market their defective products as appropriate for consumer use.

158.    Plaintiff inhaled Defendants' unreasonably dangerous nitrous oxide canister products.  The risks of that use outweighed the benefits.  An ordinary consumer would not expect those products to carry a significant risk of serious injury and death.

32

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

159.   Defendants did not take steps that would have rendered their products less dangerous for the use they were intended such as mixing nitrous oxide with an appropriate concentration of oxygen or instructing that the product should only be inhaled once mixed with an appropriate concentration of oxygen, even though doing so was economically and technologically feasible.

160.   Defendants' products were inhaled by consumers including Plaintiff, which directly and proximately caused their injuries.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT V: LIABILITY FOR UNFAIR OR DECEPTIVE ACTS OR PRACTICES IN THE CONDUCT OF ANY TRADE OR COMMERCE

### (Against All Defendants)

161.   Plaintiff incorporates preceding paragraphs 1 through 99 as if fully stated herein.

162.   Defendants manufactured, promoted, marketed, sold, and distributed to consumers nitrous oxide canisters that it knew or reasonably should have known would be inhaled for recreational purposes.  In doing so, they declined to make available to consumers information about the risks associated with inhaling nitrous oxide or information about how to consume or limit consumption of nitrous oxide in a manner that would limit those risks.

163.   This conduct was unfair and deceptive in that it misled consumers as to the risks of inhaling the nitrous oxide canisters sold by Defendants in trade or commerce to consumers including Plaintiff.

33

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

164.  Defendants' conduct negatively impacted the public interest in that it contributed to a surge of nitrous oxide related injuries and other negative social outcomes including addiction, loss of employment, and decreased quality of life for consumers including Plaintiff.

165.  Defendants' conduct injured Plaintiff's business or property interests including them by depriving them of funds used to purchase nitrous oxide canisters, causing loss of employment, and impairing future job earning potential.

166.  Defendants' conduct caused these outcomes.  Had Defendants provided consumers including Plaintiff adequate warnings and/or instructions of the risks of using their products, Plaintiff would have read and heeded those warnings and/or instructions.  As a result, Plaintiff would have avoided, limited, or modified the means of nitrous oxide inhalation and, as a result, avoided injury.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## DAMAGES

167.  As a direct and proximate result of the above acts, omissions, and other conduct of Defendants, Plaintiff suffered and continue to suffer bodily, cognitive, and mental injuries resulting in physical and mental pain and suffering, disability, impairment, mental anguish, aggravation, inconvenience, loss of enjoyment of life, loss of consortium, and other general damages to be proven at the time of trial.

168.  As a direct and proximate result of the above acts, omissions, and other conduct of Defendants, Plaintiff has been required to seek various medical treatments, including but not limited to treatment by physicians, hospitals, therapists,

34

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

diagnostic procedures, as well as the taking of medication.  Plaintiff will continue to require medical treatment in the future, in amounts to be proven at the time of trial.

169.   As a direct and proximate result of the above acts, omissions, and other conduct of Defendants, Plaintiff has incurred medical expenses, lost wages, lost earning capacity, property damage, and other special damages, in amounts to be proven at the time of trial.

170.   Plaintiff has incurred other damages to be proven at trial.

## JURY TRIAL DEMAND

171.   Plaintiff hereby demands a trial by jury on all the triable issues within this pleading.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the Court to enter judgment in Plaintiff's favor and against Defendants for:

a.   actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

b.   pre-judgment and post-judgment interest;

c.   reasonable attorneys' fees as provided by law;

d.   costs and expenses of these actions;

e.   statutory damages, treble damages and other relief permitted by the applicable laws; and

f.   any other relief the Court may deem just and proper.

35

COMPLAINT CASE NO. _____

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

Dated:  April 14th, 2026                    Respectfully Submitted,


KELLER POSTMAN LLC                          STRITMATTER LAW


By:  */s/ Warren Postman*                   By:  */s/ Karen Koehler*

Warren Postman (*pro hac vice*             Karen Koehler, WSBA #15325
*forthcoming*)                              karenk@stritmatter.com
wdp@kellerpostman.com                       Andrew Ackley, WSBA # 41752
Ashley Keller (*pro hac vice*              andrew@stritmatter.com
*forthcoming*)                              3600 15th Ave. W, Ste. 300
ack@kellerpostman.com                       Seattle, WA 98119
John J. Snidow (*pro hac vice*             Telephone: (206) 448-1777
*forthcoming*)                              Facsimile: (206) 778-2131
jj.snidow@kellerpostman.com
Michael Kelly (*pro hac vice*
*forthcoming*)
michael.kelly@kellerpostman.com             LAW OFFICES OF JENNIFER
150 N. Riverside Plaza, Ste. 4100           DUFFY, APC
Chicago, IL 60606
Telephone: (312) 741-5220                   By:  */s/ Jennifer Duffy*
Facsimile: (312) 971-3502
                                            Jennifer Duffy (*pro hac vice*
                                            *forthcoming*)
                                            28649 S. Western Ave., Ste. 6571
                                            Los Angeles, CA 90734
                                            Telephone: (213) 212-2202



                                            *Attorneys for Plaintiff*

COMPLAINT CASE NO. _____